**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHANGZHENG ZHENG,<br>Petitioner,<br><br>v.<br><br>WARDEN, DESERT VIEW FACILITY, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-04296-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner, Changzheng Zheng, is a native and citizen of the People's Republic of China who is currently in the physical custody of Respondents at the Desert View Facility, in Adelanto, California. (Dkt. No. 1.) Petitioner entered the United States without being admitted or paroled on or about September 14, 2024. *Id*. at 14.

On July 30, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, arguing Respondents detained him without notice and a

hearing prior to re-detention thereby violating his due process rights. (Dkt. No. 1.) He seeks an order requiring Respondents to release him from immigration detention "unless and until the government provides a constitutionally compliant bond hearing." *Id.* at 9.

In their Answer, Respondents state, "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026)," and "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Dkt. No. 10 at 2.) Respondents also argued, "[T]o the extent Petitioner has not yet requested a bond hearing from the Immigration Court, Petitioner has not yet properly exhausted his available administrative remedies." *Id.* Respondents did not present opposition to Petitioner's due process claim. *Id.* In Petitioner's Reply, Petitioner argues he is not required to exhaust administrative remedies for his constitutional claims. (Dkt. No. 11 at 2.) Additionally, Petitioner argues that since this matter arises from his re-detention not his initial detention, *Rodriguez Vazquez* does not apply to Petitioner's case. *Id.* at 2–3.

In light of Respondents' position, the Court finds that Petitioner has demonstrated that the Government violated his right to due process by re-detaining him without notice and an opportunity to be heard. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-

deprivation notice and a hearing at which the Government must justify the need to detain him.

## II. FACTUAL BACKGROUND

Petitioner is a citizen of the People's Republic of China. (Dkt. No. 1 at 14.) Petitioner asserts he entered the United States on September 14, 2024, without being admitted or paroled and "was detained by immigration authorities for approximately two days and was then released on conditions requiring him to report periodically to [Immigration and Customs Enforcement ('ICE')]." *Id.* Specifically, on September 14, 2024, United States Border Patrol ("USBP")] arrested Petitioner, issued Petitioner a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i) as an alien present without admission or parole, and released Petitioner from custody on "Order of Release on Recognizance, form I-220A." (Dkt. No. 10-1 at 4.) On or about September 16, 2024, Petitioner was placed in full removal proceedings before an Immigration Judge ("IJ"). (Dkt. No. 1 at 14.)

Following his release, Petitioner filed an application for asylum. *Id.* Since his release, Petitioner asserts he has made good-faith efforts to comply with all reporting requirements and informed the immigration court and ICE of every change of address. *Id.* He has worked to support himself, paid taxes, and has no criminal history. *Id.*

Despite Petitioner's efforts, on July 13, 2026, Petitioner reported to ICE's office in Los Angeles for a scheduled check-in appointment, and an ICE officer informed him that he was about six months late for his January 12, 2026, check-in appointment. *Id.* at 15. Petitioner asserts that he "made a good faith mistake with his check-in date." *Id.* Specifically, Petitioner asserts that he "mistook the number '1' for '7' thinking the check-in date was July 12,

2026." *Id.* Since July 12, 2026, was a Sunday, Petitioner appeared at the ICE office on Monday, July 13, 2026. *Id.* The ICE office "told Petitioner that the mistake about the date did not matter," and "ICE detained Petitioner for [an] address issue." *Id.*

Respondents assert Petitioner was re-detained because "Petitioner failed to comply with the Alternatives to Detention Program by providing a false address and failing to report." (Dkt. No. 10 at 2 (citing Dkt. No. 10-1 at 3–6.)) During Petitioner's July 13, 2026, check-in, ICE conducted an interview regarding Petitioner's January 12, 2026, Change of Address/Contact Information Form, Form EOIR-33, and Motion to Change Venue ("COV") with Executive Office Immigration Review ("EOIR"), which was granted by an IJ, and Petitioner "stated that he has never lived at the address indicated on the EOIR-33 and COV." (Dkt. No. 10-1 at 4–5.) Additionally, Petitioner signed a sworn statement that indicates he has never lived at the address provided on his Form EOIR-33 and explains he was not sure why the Form EOIR-33 filed by his counsel indicated he lived at an address he did not. *Id.* at 9–10.

On July 30, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release him from immigration detention because his due process rights have been violated. (Dkt. No. 1.) In their Answer, Respondents did not present opposition to Petitioner's due process claim. (Dkt. No. 10.) For the reasons set forth below, the Court **GRANTS** the habeas petition.

## III. PROCEDURAL HISTORY

Petitioner filed the instant habeas petition on July 30, 2026. (Dkt. No. 1.) The Court, on July 31, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondents to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard

procedures and briefing schedule under the General Order. (Dkt. No. 6.) Respondents filed their Answer on August 7, 2026. (Dkt. No. 10.) Petitioner filed his Reply on August 10, 2026. (Dkt. No. 11.) Thus, the matter is fully briefed.

On July 31, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 4.) The action has been fully consented to according to the General Order 26-05 and will proceed before a magistrate judge. (Dkt. No. 5.)

## IV. DISCUSSION

The Court now turns to the merits of Petitioners' claims. Petitioner and Respondents agree that Petitioner has been detained pursuant to 8 U.S.C. § 1226(a).

### A. Administrative Exhaustion

As a preliminary matter, the Court addresses exhaustion, as Respondents argue in their Answer that "to the extent Petitioner has not yet requested . . . a bond hearing from the Immigration Court, Petitioner has not yet properly exhausted his available remedies." (Dkt. No. 10 at 2.) Respondents further argue, "Requiring Petitioner to pursue th[e] administrative remedy [of requesting a bond hearing] in Immigration Court first is not futile because the Ninth Circuit's issuance of the *Rodriguez Vazquez v. Bostock* decision on July 30, 2026 has now resolved this legal issue within the Ninth Circuit, including its Immigration Courts." *Id.* However, Petitioner contends that exhaustion is not required since "[a]dministrative review could not provide the relief sought because the immigration court lacks jurisdiction to adjudicate constitutional claims." (Dkt. No. 11 at 2.) Petitioner states, "The Ninth Circuit has long recognized that exhaustion is not required where the agency lacks authority to decide constitutional questions." *Id.*

(citing *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994); *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006) (citations omitted)).

While the exhaustion requirement "is prudential, rather than jurisdictional, for habeas claims" such that a court may waive the requirement, courts may nevertheless require exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Nonetheless, courts "have discretion to waive a prudential requirement" if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004).

Here, the Court finds that a waiver of the exhaustion requirement is warranted. The Court finds that none of the *Hernandez* factors justify the Court to require exhaustion. 872 F.3d at 988. First, Respondents' argument that Petitioner can seek a bond hearing "in the Immigration Court after 180 days of total detention time" does not address the question at issue here—whether the Petitioner's re-detention without a bond hearing violated due process. *See, e.g., Moscui v. Semaia*, No. 5:26-CV-05748-MBK, 2026 WL 3027140, at *4 (C.D. Cal. Oct. 8, 2026) (finding that waiver of exhaustion was warranted where petitioner "raises legal and constitutional challenges to his arrest and detention that would not be before the [Board of Immigration Appeals ("BIA")] and, in any event, the BIA could not consider because it 'does

not have jurisdiction to determine the constitutionality of the statutes it administers'" (quoting *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006)). Second, because Petitioner's habeas petition includes, inter alia, a due process claim, the administrative scheme is likely futile. Lastly, "[w]here the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026). Consequently, the Court exercises its discretion to forgo the exhaustion requirement in this case. *Laing*, 370 F.3d at 998.

**B. Petitioner's Detention Violates Due Process.**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

When USBP released Petitioner from custody on September 14, 2024, after determining he was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec.

637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018).

Respondents' choice to not oppose Petitioner's due process claims in their Answer is in effect a concession that the Petition should be granted. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (noting that "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in); *see also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship

and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id*. at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

1. ***Constitutionally Protected Liberty Interest***

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release.

*Morrissey* at 408 U.S. at 482. “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33 (N.D. Cal. 2025) (collecting cases). Noncitizens “who have once passed through our gates, even illegally,” are entitled to “proceedings conforming to traditional standards of fairness encompassed in due process of law.” *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely “set[ting] foot on U.S. soil” may not be sufficient to “effect[ ] an entry” and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen “gain[s a] foothold in the United States,” *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or “begins to develop . . . ties” in this country, “his constitutional status changes accordingly,” and he “has a right to due process,” *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those “who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population”). Put another way, “[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]” *Thuraissigiam*, 591 U.S. at 107.

Here, after detaining Petitioner on September 14, 2024, USBP released him on his own recognizance. (Dkt. No. 1 at 14; Dkt. No. 10-1 at 4.) Until he was re-detained on July 13, 2026, Petitioner had spent nearly all his approximately one (1) year and ten (10) months in the United States released on his own recognizance. *Id.* Petitioner is entitled to at least those protections described above with respect to his protected liberty interest in remaining out

of immigration custody.

2. ***Procedural Protections***

**a) Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). While Petitioner has remained subject to an Order of Release on Recognizance, which is a form of conditional parole, following his release on September 14, 2024, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for about twenty-two (22) months before his re-detention. (Dkt. No. 1 at 14–15.) As his circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following his release from immigration custody, Petitioner has lived in the United States, filed for asylum, worked to support himself, paid taxes, and been convicted of no crimes. *See id.* at 14. While individuals

apprehended shortly after entry in the United States may have “a lesser liberty interest” “at the margin” than other noncitizens who have resided in the United States for decades, “the same important interest is at stake—freedom from prolonged detention.” *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts, including the undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before his recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in “eleven months she spent at liberty” following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for “over two years” under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released “over two years” under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner’s substantial liberty interest in maintaining his freedom from confinement.

**b) Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that “[t]here

is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of [his] liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on conditional parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The risk of wrongful deprivation is especially high here given evidence that Petitioner has no criminal record, has argued his compliance with the conditions of supervision, and has maintained required contacts with the Government, including the admittedly late check-in that precipitated his re-detention. *See* (Dkt. No. 1 at 14; Dkt. No. 10-1 at 5). Since his release, Petitioner has not given any reason to think that the Government's initial determination was in error. While Petitioner provided a false address and

missed his appointment due to a purported mistake, which is understandable since the date on the Personal Report Record appears to read "7/12/2026" despite also stating "January 12, 2026," (Dkt. 1-1 at 1), Petitioner was still entitled to a pre-deprivation notice and hearing.

Based on this record, the Court concludes there is a high risk that the lack of pre-deprivation process—that is, notice of any alleged release violations and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

**c) Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process

is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. Accordingly, the Court orders Petitioner's forthwith release and prevents his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine him.

## V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, Changzheng Zheng's (A #: 226-136-341) immediate release, subject to conditions of supervision that existed prior to his detention on July 13, 2026, along with the return of his personal belongings, including all of his identification, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

Dated: November 23, 2026

HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE